IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| ALEX SAPIR,<br>    as preliminary executor of the ESTATE<br>    OF TAMIR SAPIR,<br><br>                    Plaintiff,<br><br>    v.<br><br>THE UNITED STATES,<br><br>                    Defendant. | No. 20-670T<br>Judge Kathryn C. Davis |

**RESPONSE TO MOTION FOR JUDGMENT ON THE PLEADINGS**

The United States, by and through its undersigned counsel, respectfully responds in opposition to the motion of plaintiff Alex Sapir, in his capacity as preliminary executor of the Estate of Tamir Sapir (the "Estate"), for judgment on the pleadings. The Court should deny Mr. Sapir's motion because, as explained below, the pleadings fail to demonstrate the absence of a genuine issue of material fact. Rather, Mr. Sapir must meet his burden of proving that the Estate is entitled to the tax refunds of nearly $26 million sought in the complaint.

## BACKGROUND

**I.  Factual History**

Tamir Sapir passed away on September 24, 2014. Compl. ¶ 5. Alex Sapir was named preliminary executor of the Estate on December 18, 2014. *Id.*

**A.  Fiscal Year Ending July 31, 2015**

On November 16, 2015, the Estate timely requested a five-month extension of the deadline to file its Form 1041 income tax return for the fiscal year ending July 31, 2015 ("FYE15"), and paid $21,000,000 towards its estimated tax for that year. Compl. ¶ 11. On April

18, 2016, the Estate timely filed its original Form 1041 for FYE15. *Id.* ¶ 12. On November 15, 2016, the Estate filed an amended Form 1041 for FYE15. *Id.* ¶ 13. On that return, the Estate reported a tax liability of $6,405,869, and requested that the IRS apply the $14,594,131 overpayment towards its tax liability for following fiscal year, *i.e.*, ending July 31, 2016 ("FYE16"). *Id.*

On April 12, 2019, the Estate filed a second amended Form 1041 for FYE15. *Id.* ¶ 14. Mr. Sapir alleges that on that return, the Estate reported a tax liability of $2,770,921 for FYE15, requested that the IRS apply $14,594,131 of the asserted overpayment towards its tax liability for the following year, and requested that the IRS refund the remaining $3,634,948 of the asserted overpayment. *Id.*

B.  **Fiscal Year Ending July 31, 2016**

Meanwhile, on November 15, 2016, the Estate timely filed its original Form 1041 for FYE16. Compl. ¶ 16. On that return, the Estate reported a tax liability of $63,155,297, an overpayment credit of $14,594,131 from FYE, and a balance due of $48,561,166. *Id.* On March 15, 2017, the Estate paid the $48.6 million balance due, plus associated late-payment penalties and interest.[1] *Id.* ¶ 17.

On April 12, 2019, the Estate filed an amended Form 1041 for FYE16. *Id.* ¶ 18. Mr. Sapir alleges that on its amended return for FYE16, the Estate reported a tax liability of $40,945,268, an overpayment credit of $14,594,131 from FYE15, and—on page 33 of the return—a payment of $48,561,166 and a resulting refund request of $22,210,029. *Id.* ¶¶ 18−19.

---

[1] The late-payment penalties and interest are not separately at issue in this lawsuit, except that the Estate is entitled to a refund of such penalties and interest to the extent it has overpaid the underlying tax liability.

Mr. Sapir further alleges that on May 1, 2020, the Estate filed a second amended return for FYE16 that did not differ from its first amended return, except to show the $48.6 million payment and refund request on page 1 instead of page 33. *Id.* ¶ 20.

## II. Procedural History

On June 2, 2020, Mr. Sapir initiated the instant lawsuit in his capacity as preliminary executor of the Estate. He alleges that the IRS has not acted on the Estate's refund requests. Compl. ¶¶ 15, 21. Accordingly, he seeks refunds in the amounts of $3,634,948 (for FYE15) and $22,210,029 (for FYE16). Compl. Prayer for Relief. There are no other tax years at issue here.

After two enlargements, the United States timely answered Mr. Sapir's complaint on December 2, 2020. The parties then timely filed their joint preliminary status report on January 21, 2021, in which Mr. Sapir indicated he planned to move for judgment on the pleadings. ECF No. 17. The Court set a briefing schedule for Mr. Sapir's motion and ordered that "initial disclosures and discovery shall be deferred" until after it resolves the motion. ECF No. 18. Mr. Sapir timely filed the instant motion on January 28, 2021. This response follows.

## QUESTION PRESENTED

Do the United States' admissions that the Estate filed certain income tax returns establish the absence of a dispute regarding material facts, where no such admissions pertain to the actual content of the returns?

## STANDARD OF REVIEW

Rule 12(c) of the Rules of the United States Court of Federal Claims provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "Judgment on the pleadings for a plaintiff is appropriate where there are no material facts in dispute and the plaintiff is entitled to judgment as a matter of law." *New*

*Zealand Lamb Co., Inc. v. United States*, 40 F.3d 377, 380 (Fed. Cir. 1994).  In evaluating a motion for judgment on the pleadings, courts must construe the pleadings in the light most favorable to the nonmovant and "ignore any assertions in the pleadings that amount to legal conclusions." *J.M. Huber Corp. v. United States*, 27 Fed. Cl. 659, 661 (1993).  Unresolved issues of fact "cannot be decided in ruling on a 12(c) motion," and "if an unresolved factual issue is material, the motion cannot be granted."  *Id.* at 662; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (explaining that a fact is material if it "might affect the outcome of the suit under the governing law").

## SUMMARY OF THE ARGUMENT

Mr. Sapir's repeated assertions that the United States "does not deny any of the material facts," Mot. 5, ECF No. 19, are simply wrong.  While the United States admits that the Estate *filed* certain returns, the United States makes no admissions regarding the *content* of those returns.  Mr. Sapir is therefore mistaken that the pleadings "are sufficient to conclude that [he] has satisfied his burden of proving that the Estate overpaid [FYE15] and [FYE16] taxes." *Id.* at 6.  Because material facts in this matter are not resolved by the pleadings, the Court should deny Mr. Sapir's motion.

## ARGUMENT

The pleadings in this matter consist of Mr. Sapir's complaint and attached exhibits, and the United States' answer.[2]  RCFC 7(a); RCFC 10(c); *see also Rocky Mountain Helium, LLC v. United States*, 841 F.3d 1320, 1325 (Fed. Cir. 2016).  Taken together, they do not (as Mr. Sapir incorrectly maintains) establish the Estate's entitlement to the tax refunds it seeks.

---

[2] The United States did not attach any exhibits to its answer.

## I.     Burden of Proof in Tax-Refund Suits

It is well established that tax-refund suits are *de novo* proceedings in which a plaintiff must meet its burden, by a preponderance of the evidence, that it has "overpaid its taxes for the year in question in the exact amount of the refund sought." *Wells Fargo & Co. v. United States*, 91 Fed. Cl. 35, 75 (2010), *aff'd*, 641 F.3d 1319 (Fed. Cir. 2011).  In other words, the "ultimate question presented for decision" in a tax-refund lawsuit is "whether the taxpayer has overpaid [its] tax" for the year(s) at issue.  *Lewis v. Reynolds*, 284 U.S. 281, 283 (1932).  The inquiry "involves a redetermination of the entire tax liability" wherein "it is incumbent *upon the claimant* to show that the United States has money which belongs to [it]."  *Id.* (emphasis added).

## II.    Material Facts Remain Unresolved

Mr. Sapir's motion reflects his apparent belief that because the Estate has filed certain income tax returns, and the IRS has not acted on those returns, he is entitled to the refunds claimed therein.  According to Mr. Sapir, the Estate's tax-refund claims "are uncontested by the Government" and thus the Estate is entitled to receive the requested refunds.  Mot. 4, ECF No. 19.  Not so.  The IRS's inaction regarding a refund claim merely entitles the taxpayer to file suit, as Mr. Sapir has done.  *See* I.R.C. § 6532(a)(1) (providing that taxpayers may file suit once six months have elapsed after the filing of a tax refund claim if the IRS does not act on that claim).  It is not, as Mr. Sapir would have it, tantamount to an acquiescence to such claim.

Mr. Sapir distorts the nature of the United States' admissions:

| Para. | Complaint | Answer |
|---|---|---|
| 11 | Plaintiff filed a request for extension for the initial Form 1041 for FYE 15 on November 16, 2015.  The IRS accepted the extension request electronically on the same date.  Plaintiff paid $21,000,000 with the request for extension.  In particular, there was an automated | Admits that on or about November 16, 2015, a request for an automatic extension of time to file the Estate's Form 1041 for [FYE15] was filed, and that $21,000,000.00 was paid towards the Estate's [FYE15] taxes with the request for extension.  States further that the |

| Para. | Complaint | Answer |
|---|---|---|
|  | payment by Signature Bank to USATAXPMT on November 18, 2016, in the amount of $21,000,000. | documents referenced in paragraph 11 should be referred to for a full expression of their contents. |
| 14 | Plaintiff filed the second amended Form 1041 for FYE 15 on April 12, 2019. The receipt and postmark provide evidence of the mailing to the IRS Service Center in Kansas City, MO. The return showed corrected tax due of $2,770,921, and directed IRS to continue to apply the overpayment of $14,594,131, to the Plaintiff's FYE 16 estimated tax account. The return further directed that the remaining overpayment of $3,634,948 should be refunded. | Admits that a second amended Form 1041 for the Estate was received by the IRS on April 17, 2019. States further that the documents referenced in paragraph 14 should be referred to for a full expression of their contents. |
| 15 | After approximately 14 months the IRS has not paid the FYE 15 Refund, nor has it provided any objection to payment. | Admits that as of the date on which Mr. Sapir filed the complaint in this action, the IRS had not issued a refund pursuant to the [E]state's second amended [FYE15] Form 1041. |
| 17 | Plaintiff paid the FYE 16 balance due ($48,561,166) plus its estimate of the accrued late-payment penalty ($971,223) and interest ($674,978) for a total of $50,207,367 on March 15, 2017. In particular, there was a wire transfer from Signature Bank to the IRS in the amount of $50,207,367. . . . | Admits that the IRS received a payment of $50,207,367.00 towards [FYE16] ON March 15, 2017. Admits that on April 10, 2017, the IRS assessed a late-payment penalty in the amount of $971,223.32 and interest in the amount of $642,117.08 with respect to [FYE16]. States that on July 24, 2017, the IRS abated interest in the amount of $442.27 and issued a refund in the amount of $33,302.87 with respect to [FYE16]. States further that the documents referenced in paragraph 17 should be referred to for a full expression of their contents.[3] |
| 18 | Plaintiff filed the first amended Form 1041 for FYE 16 together with the second amended Form 1041 for FYE 15 on April | Admits that an amended [FYE16] Form 1041 for the Estate was received by the IRS on April 17, 2019. Status further that |

---

[3] The March 15, 2017 payment thus comprises $48,561,166.00 in tax (*i.e.*, the 63,155,297.00 tax liability shown on the Estate's first amended Form 1041 for FYE16 less the $14,594,131.00 overpayment applied from FYE15), a late-payment penalty of $971,223.32, interest in the amount of $641,674.81 (*i.e.*, the $642,117.08 assessment less the $442.27 abatement), and the $33,302.87 refund.

| Para. | Complaint | Answer |
|---|---|---|
|  | 12, 2019. The receipt and postmark provide evidence of mailing to the IRS Service Center in Kansas City, MO. Page 1 of the return showed corrected tax due of $40,945,268. Page 1 erroneously failed to show the tax payment of $48,561,166 . . . . | the documents referenced in paragraph 18 should be referred to for a full expression of their contents. States further that the final sentence in paragraph 18 is a legal conclusion and/or characterization of Mr. Sapir's case, to which no response is required. |
| 19 | The Omitted Payment was correctly reflected on page 33 of the first amended FYE 16 return . . . . On that page Plaintiff claimed the resulting refund of $22,210,029. | States that the first sentence in paragraph 19 is a legal conclusion and/or a characterization of Mr. Sapir's case, to which no response is required. States that the document referenced in paragraph 19 should be referred to for a full expression of its contents. |
| 21 | After approximately 14 months the IRS has not paid the FYE 16 Refund, nor has it provided any objection to payment. | Admits that as of the date on which the complaint in this action was filed, the IRS had not issued any refunds pertaining to the Estate's [FYE16] beyond [amounts not at issue]. |
| 22 | Plaintiff respectfully asks this Court to enter judgment in its favor and against Defendant and to:<br>a. Direct the [IRS] to pay Plaintiff the FYE 15 Refund in the amount of $3,634,948, or such other amount as determined by the Court;<br>b. Direct the [IRS] to pay Plaintiff the FYE 16 Refund in the amount of $22,210,029, or such other amount as determined by the Court;<br>. . .<br>f. Award Plaintiff such other and further relief as this Court may deem necessary and proper. | Denies that the Estate is entitled to any relief. |

ECF Nos. 5 (redacted version of Complaint), 13 (Answer) (internal citations omitted) (footnote added).

The United States admitted simply that Mr. Sapir filed certain returns and made certain payments. Nowhere did the United States make any admissions regarding the *content* of those returns. Statements that certain documents merely exist, and that those documents "should be

7

referred to for a full expression of their contents," are not statements concerning the content of those documents, much less the truthfulness of their alleged content. As the United States indicated in the parties' joint preliminary status report:

> The primary issue for resolution in this case is ascertaining the correct amounts for sales proceeds received and basis for the [E]state holdings disposed of during FYE15 and FYE16. Additionally, the correct amounts for various income and deduction items received both directly and via pass-through entities during FYE15 and FYE16 must be determined.

JPSR 4, ECF No. 17. In other words, the material facts in this matter include the content of the Estate's amended returns filed in April 2019, and whether those contents are accurate. Those facts are still at issue. They have not been resolved by the pleadings.

Mr. Sapir takes the United States to task for not providing specific objections to the Estate's FYE15 and FYE16 returns. But these protestations miss the mark for three reasons. First, as noted above, it is the Estate's burden to prove that it is entitled to the requested refunds; it is not the United States' burden to prove otherwise.

Second, while it has indeed been nearly two years since the April 2019 refund claims that are at issue here were filed, Mr. Sapir ignores the import of the *de novo* nature of these proceedings.

> This Court is a separate and distinct forum from the IRS. When a taxpayer seeking relief files a tax refund suit in this Court, the taxpayer is initiating a separate proceeding whereby the taxpayer is asking for an independent legal remedy . . . . As a separate forum, this Court follows a different procedural structure when determining whether plaintiffs are entitled to a tax refund than does the IRS.

*D'Avanzo v. United States*, 54 Fed. Cl. 183, 185−86 (2002). In other words, a tax-refund lawsuit "is not an appellate review of the administrative decision that was made by the IRS [or lack thereof]; instead, the Court must make an independent decision as to whether the taxpayer is due

a refund." *Id.* at 186.  As noted above, the inaction by the IRS is only relevant with respect to establishing the Court's subject-matter jurisdiction.

Third, as a legal matter, this case is still in its nascent stages.  The joint preliminary status report was filed barely a month ago, and a discovery schedule has not been established.  Thus, "[d]espite the passage of time," the United States need not have "proposed any adjustment or expressed any disagreement with the computation of the refunds claimed," JPSR 4, ECF No. 17, as of yet.  Rather, it is well established that as a party to this litigation, the United States is entitled to discovery to defend the claims asserted against it.  *See* RCFC 26(b)(1); *see also, e.g.*, *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986) (observing that parties must have "a fair opportunity to develop and prepare the case"); *Estate of Rubenstein v. United States*, 94 Fed. Cl. 51, 53 (2010) ("Documents, including the financial records supporting the income stated and deductions claimed by the decedent's estate, are critical to [the United States'] ability to evaluate the accuracy of the federal income tax return.").  The need for discovery is particularly relevant in a tax-refund suit because, as here, nearly all of the relevant information is in the hands of the taxpayer.

"Unfortunately, it is a simple fact of life that litigation can be expensive and time-consuming, especially when attempting to prove a claim of substantial dollar value in a *de novo* proceeding." *Int'l Paper Co. v. United States*, 36 Fed. Cl. 313, 323 (1996).  However, "this is precisely what [the Estate] should have been prepared [for] all along" when it filed suit.  *Id.*  Mr. Sapir's motion should be denied.

### III.     The United States Is Not Asserting a Counterclaim

Finally, Mr. Sapir takes umbrage with the United States' statement that "[a]ny potential recovery by Mr. Sapir on behalf of the Estate in this suit must be reduced (offset) by any

additional liability of the Estate under the Internal Revenue Code resulting from the Court's determination of the issues raised in the complaint." Mot. 8, ECF No 19 (quoting Answer ¶ 23, ECF No. 13). But the United States is not asserting a counterclaim, and thus it did not need to include a detailed factual recitation therein. The United States merely asserted its right to either "reduce [the Estate's] recovery on its refund claim by other amounts owed to the Government for the same tax year," *Cencast Servs., L.P. v. United States*, 94 Fed. Cl. 425, 441 (2010) (defining "[t]he ordinary use of the term 'setoff' in tax refund cases"), *aff'd*, 729 F.3d 1352 (Fed. Cir. 2013), *cert. denied*, 573 U.S. 931 (2014), or offset any refund to which the Estate may otherwise be entitled pursuant to I.R.C. § 6402.

## CONCLUSION

As explained above, the pleadings leave material factual issues in this case unresolved. The United States therefore respectfully requests that the Court deny Mr. Sapir's motion for judgment on the pleadings.

Respectfully submitted,

*/s/ Patrick Phippen*
PATRICK PHIPPEN
Attorney of Record
U.S. Department of Justice – Tax Division
Court of Federal Claims Section
PO Box 26
Washington, DC  20044
Phone:  (202) 514-0456
Fax:  (202) 514-9440
E-mail:  patrick.phippen@usdoj.gov

DAVID A. HUBBERT
Acting Assistant Attorney General
DAVID I. PINCUS
Chief, Court of Federal Claims Section


<u>*/s/ David I. Pincus*</u>
DAVID I. PINCUS
Of Counsel

*Attorneys for the United States*

February 24, 2021